UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

|   |   |   |
|---|---|---|
| JAMES MUSICO, | : | |
| | : | |
| Plaintiff, | : | **OPINION** |
| | : | |
| v. | : | Civ. No. 02-5122 (WHW) |
| | : | |
| JO ANNE B. BARNHART, | : | |
| Commissioner of Social Security | : | |
| | : | |
| Defendant. | : | |

**Walls, District Judge**

 Plaintiff James Musico appeals his denial of disability insurance benefits. This Court affirms the Administrative Law Judge ( LJ  decision to deny benefits.

## BACKGROUND

**A.    Procedural History**

 Plaintiff filed an application for disability insurance benefits on August 22, 1996, with a protective filing date of July 26, 1996. (Tr. 17.) Plaintiff alleges an inability to work beginning July 15, 1996, as the result of six vessel by-pass open heart surgery. (Tr. 31.) On April 15, 1998, an ALJ decision was issued finding that Plaintiff was not disabled, and an Action by the Appeals Council, dated September 24, 1999, affirmed that decision. (Tr. 17.)

 Plaintiff then filed an application for disability insurance benefits on September 14, 1998. (Tr. 17.) The claim was denied initially and on reconsideration. Id. Plaintiff requested a hearing before an ALJ, which was held on August 13, 1999. (Tr. 337-372.) The ALJ affirmed the decision of the Commissioner of Social Security ( ommissioner  on November 17, 2000. (Tr.

1

**NOT FOR PUBLICATION**
**CLOSED**

25.)  The ALJ determined that Plaintiff suffered from a severe impairment, and that Plaintiff residual functional capacity prevented performance of his past relevant work.  (Tr. 23-24.)  The ALJ found that there were a significant number of jobs in the national and regional economy that Plaintiff could perform consistent with his residual functional capacity, age, education, and work experience, and concluded that Plaintiff could not be considered  isabled. Id.  Plaintiff  request for a review by the Appeals Council was denied by action of the Appeals Council, dated September 20, 2002.  (Tr. 5-6.)  Plaintiff now brings this appeal alleging that the ALJ  decision is not supported by substantial evidence and is not in accord with the procedures of the Social Security Administration.

**B.**     **Personal Facts & Employment History**

Plaintiff was 40 years old at the time of his hearing.  (Tr. 346.)  He had attended school through the tenth grade and had later earned his GED.  Id.  His past relevant work was overseeing the installation of sprinkler systems in high rise construction and plumbing.  Id.  Due to his high blood pressure, constant nose bleeds, chest pains and numbness in his arms, he relocated to Pennsylvania to start a residential plumbing installation business.  (Tr. 347.)  He did that from April 1990 to January 1993.  (Tr. 347.)  He then moved on to do mostly plumbing repairs and then slowed down further to only doing basic faucet repairs.  (Tr. 348.)  He tried to sell the material itself as a plumbing supply source, but found that to be more stressful and

**NOT FOR PUBLICATION**
**CLOSED**

physical than he had anticipated.  Id.  He closed down the business and moved back to New Jersey in September 1996.  (Tr. 349.)

**C.     Medical History**

In 1993, Plaintiff had successful six vessel by-pass surgery.  (Tr. 32.)  He underwent cardiac catheterization including coronary angiography and left ventricularography.  Id.  Plaintiff alleges that he became disabled on April 16, 1998 due to his bypass surgery, hypertension, pain in knees, left arm, ribs, chest, left hip, ankle and depression.  (Tr. 18.)  At the time of his hearing, Plaintiff was taking medications under a doctor  care.  (Tr. 352.)

Plaintiff was seen by Dr. Seth Fisher of the Geisinger Medical Group from January 6, 1993 to March 1, 1998 for complaints of chest pressure.  (Tr. 104-193.)  During the initial cardiac consultation, the stress test was suggestive of ischemia, and the impression was coronary heart disease with symptoms consistent with progressive angina and hypertension under fair control. (Tr. 107.)  Plaintiff also had severe hypercholestorlemia under poor control.  (Tr. 110.) After cardiac catheterization was performed on January 21, 1993, Plaintiff underwent a six vessel coronary artery revascularization.  (Tr. 205, *see* 205-15.)  Upon follow-up with Dr. Fisher on March 4, 1993, Plaintiff indicated that he felt good and had returned to his job as a plumber, doing mostly supervisory light duty.  (Tr. 115.)  After follow-ups with Dr. Fisher on July 28, 1993 and November 22, 1993, Dr. Fisher considered Plaintiff  hypertension to be under good control and his hypercholesterolemia was under therapy.  (Tr. 123.)  Upon follow-ups with Dr. Fisher on February 1, 1994, April 27, 1994, October 12, 1994, April 25, 1995 and October 26,

3

NOT FOR PUBLICATION
CLOSED

1995, his doctor noted that Plaintiff was doing well. (Tr. 125-134.) However, Dr. Fisher noted that Plaintiff had not been exercising regularly. (Tr. 131.)

On August 30, 1996, Plaintiff described to Dr. Fisher a six-month history of increasing episodes of angina, with most of these episodes occurring with emotional upset. (Tr. 136.) Plaintiff was encouraged to resume some sort of activity program. (Tr. 137.) Upon follow-up with Dr. Fisher on September 18, 1996, Dr. Fisher impression was that Plaintiff was clinically stable with functional class I angina (angina at approximately a 10 MET workload[1]), hypertension was under good control and hypercholestolemia was under acceptable control. (Tr. 140.) Plaintiff was "urged" to begin walking 30 minutes a day. Id. Upon follow-up with Dr. Fisher on November 6, 1996, Plaintiff related having no symptoms of angina, congestive heart failure, or dysrhymias. (Tr. 143-144.) He was walking four to five times per week for forty-five to sixty minutes. (Tr. 143.) He had no difficulty with his medications. Id. Upon follow-up on May 28, 1997, Dr. Fisher's impression was coronary heart disease, stable, functional class I. (Tr. 146.) On November 7, 1997, Plaintiff related no cardiac symptoms, but had not been exercising. (Tr. 148.) Upon his visit to Dr. Fisher on March 1, 1998, it was noted that Plaintiff was doing well, and had returned to work, but was not yet doing heavy work. (Tr. 105.)

Plaintiff was also treated by Dr. Randall Miller from September 3, 1997 to February 4, 1999 for complaints of multiple joint pain, cervical spondylosis with occipital neuritis. He also

---

[1] An individual's ability to exercise to ten METS places him in the normal range of function or having functional class I cardiac disease. American Medical Association, *Guidelines to the Evaluation of Permanent Impairment* 171 (4th ed. 1994). Such an individual (functional class I) "has cardiac disease but no resulting limitation of physical activity; ordinary physical activity does not cause undue fatigue, palpitation, dyspnea, or anginal pain." *Id*. at 170.

4

NOT FOR PUBLICATION
CLOSED

complained of continued persistent numbness over the left hemifacial area, as well as intermittent left lower extremity pain, radiating from the left buttock and gluteal area. An EKG of April 28, 1998 was abnormal possibly due to myocardial ischemia. (Tr. 242.)

On October 27, 1998, Plaintiff was examined by Dr. Stanley Knep for tingling in the left side of his head. (Tr. 20.) Dr. Knep found no abnormality of gait, station or balance, and noted Plaintiff was able to perform fine and gross hand movements, he can communicate, and had no cognitive, behavioral or psychological manifestations. (Exhibit B-6F) (Tr. 20.)

On March 28, 2000, Dr. Rick Pumill opined that Plaintiff is unable to carry out multiple small jobs he had tried, including plumbing, and required nitroglycerin tablet use. (Tr. 274.) On July 31, 2000, Dr. Pumill opined that Plaintiff is unable to return to his occupation doing plumbing and plumbing contracting. (Tr. 276.) Dr. Pumill also felt that Plaintiff is permanently disabled and that his overall prognosis is quite guarded. (Tr. 277.)

Plaintiff was also treated by Dr. Flood of Psychiatric Associated from March 26, 2001 to July 17, 2001. The impression was adjustment disorder with mixed emotions. (Tr. 282-287.)

## DISCUSSION

A.   **Standard of Review**

This Court has jurisdiction to review the Commissioner's final decision under 42 U.S.C. § 405(g). The district court must affirm the Commissioner's decision if it is "supported by substantial evidence." 42 U.S.C. §§ 405(g), 1383(c)(3); Plummer v. Apfel, 186 F.3d 422 (3d

5

**NOT FOR PUBLICATION**
**CLOSED**

Cir. 1999) "Substantial evidence is more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Metro Stevedore Co. v. Rambo, 521 U.S. 121, 149 (1997) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). While substantial evidence must have real probative weight it "may be less than a preponderance." Brown v. Bowen, 845 F.2d 1211, 1213 (3d Cir. 1988) (citing Stunkard v. Sec'y of Health & Human Servs., 841 F.2d 57, 59 (3d Cir. 1988)).

"Despite the deference due to administrative decisions in disability benefit cases, 'appellate courts retain a responsibility to scrutinize the entire record and to reverse or remand if the [Commissioner]'s decision is not supported by substantial evidence.'" Morales v. Apfel, 225 F.3d 310, 317 (3d Cir. 2000). Cursory conclusions unsupported by evidence cannot justify an ALJ's decision. Id. "[A] reviewing court may remand a case to the Secretary for good cause, 'where relevant, probative and available evidence was not explicitly weighed in arriving at a decision on Plaintiff's claim for disability benefits.'" Dobrowolsky v. Califano, 606 F.2d 403, 409 (3d Cir. 1979) (quoting Saldana v. Weinberger, 421 F. Supp. 1127, 1131 (E.D. Pa. 1976)).

In determining if there is substantial evidence to support the Commissioner's decision, the reviewing court must consider: "(1) objective medical facts; (2) diagnoses and expert opinions of examining physicians; (3) subjective evidence of pain; and (4) the claimant's educational background, work history and age." Snee v. Sec'y of Health & Human Servs., 660 F. Supp 736, 738 (D.N.J. 1987). Accord Balock v. Richardson, 483 F.2d 773, 776 (4th Cir. 1972). In order for this Court to properly conduct judicial review and to avoid "judicial

6

**NOT FOR PUBLICATION**
**CLOSED**

usurpation of administrative functions" it must ensure that the "administrative decision . . . [is] accompanied by a clear and satisfactory explanation of the basis on which it rests." Id. Otherwise, remand is appropriate. Cotter v. Roberts, 642 F.2d 700, 705 (3d Cir. 1981).

**B.      Standard for the Commissioner's Determination of Disability**

Disability is defined by the Social Security Act as "inability to engage in any substantial gainful activity by any reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

The Commissioner must follow a five-step sequential process to determine if an applicant is disabled and eligible for Social Security disability benefits. 20 C.F.R. § 404.1520. The Commissioner must first determine whether or not the claimant is currently engaged in "substantial gainful activity." Plummer v. Apfel, 186 F.3d 422, 428 (3d Cir. 1999). "Substantial gainful activity" is defined as "the performance of significant physical or mental duties . . . for remuneration or profit." Chicager v. Califano, 574 F.2d 161, 163 (3d Cir. 1978).

Second, if the claimant is not engaged in "substantial gainful activity" then the ALJ must next determine if the claimant is suffering from a severe impairment. Plummer, 186 F.3d at 428. A severe impairment is "any impairment or combination of impairments which significantly

**NOT FOR PUBLICATION**
**CLOSED**

limits the claimant's physical or mental ability to do basic work activities." Barnhart v. Thomas, 124 S. Ct. 376, 379 (2003); 20 C.F.R. §§ 404.1520(c), 416.920(c).

If the claimant's impairments are severe, the ALJ must make a third determination that the impairments are listed in Appendix 1 to subpart P of the regulations or are equivalent to the impairments listed there. Plummer, 186 F.3d at 428; 20 C.F.R. § 404.1520. If the impairments are not listed or equivalent to those listed, then the ALJ must make a fourth finding regarding the claimant's "residual functional capacity to perform" his or her "past relevant work." Id. "Residual functional capacity is what a claimant can still do despite his limitations." Burns, 312 F.3d at 119.

If the ALJ holds that the claimant cannot return to his or her "past relevant work" due to the impairments, then the ALJ must determine if there are "other jobs existing in significant numbers in the national economy which the claimant can perform," taking into account his or her educational and work experiences. Plummer, 186 F.3d at 428.

## ANALYSIS

**A.    Substantial Evidence Supports the ALJ's Decision**

*1) Step One is Supported by Substantial Evidence.*

The ALJ concluded in step one of the sequential analysis that Plaintiff has not engaged in substantial gainful activity since the alleged onset of disability. There is substantial evidence supporting this claim, and there is no dispute regarding this evidence.

*2) Step Two is Supported by Substantial Evidence.*

NOT FOR PUBLICATION
CLOSED

The ALJ concluded in step two of the sequential analysis that Plaintiff has an impairment or a combination of impairments considered "severe" based on the requirements in the Regulations 20 C.F.R. § 404.1520(b). (Tr. 24.) A medically determinable impairment or combination of impairments is severe if it significantly limits an individual's physical or mental ability to do basic work activities. 20 C.F.R. § 404.1521. (Tr. 18.)

After considering medical evidence submitted by Dr. Randall Miller, Plaintiff's treating physician, the ALJ found that Plaintiff's depression is a "non-severe" impairment (Social Security Ruling ("SSR") 96-103p), since Plaintiff's condition has not resulted in any limitations on his ability to do basic work activities. (Tr. 19.) The ALJ further found that Plaintiff's coronary artery disease, hypertension and multiple joint arthritic pain conditions are severe, as these impairments impose significant vocationally relevant limitations. Id. The focus of the sequential analysis is the employability of Plaintiff after his severe impairments. (Tr. 340.)

*3) Step Three is Supported by Substantial Evidence.*

In analyzing Plaintiff's claim under step three, the ALJ found that these medically determinable impairments are not equivalent to the listed impairments in Appendix 1, Subpart P, Regulation No. 4. (Tr. 24.) Thus, Plaintiff's condition did not qualify him for a determination of *per se* disability. *See* 20 C.F.R., Part 404, Sub. P, App. 1.

*4) Step Four is Supported by Substantial Evidence.*

The analysis then proceeded to step four, where the Commissioner must ascertain if Plaintiff retains the "residual functional capacity" to perform his "past relevant work." Plummer, 186 F.3d at 428; 20 C.F.R. § 404.1520(d). Plaintiff did have past relevant work in

9

NOT FOR PUBLICATION
CLOSED

plumbing, which included sales and supervision, in addition to actual plumbing.  Id.  It was very heavy, semi-skilled work.  Id.  The job involved lifting up to 100 pounds occasionally, and frequently, 50 pounds.  (Tr. 23.)

In determining Plaintiff's residual functional capacity, the ALJ found Plaintiff credible to the extent he would experience chest pain upon heavy lifting or prolonged periods of walking and/or standing.  (Tr. 21.)  The residual functional capacity was, accordingly, reduced to accommodate those limitations.  Id.  As such, his past relevant work involves physical exertion beyond his residual functional capacity.  (Tr. 23.)  Thus, the ALJ determined that Plaintiff lacked the residual functional capacity to return to his former work.  20 C.F.R. §§ 404.1565.  (Tr. 24.)

*5) Step Five is Supported by Substantial Evidence.*

Once inability to return to former work is shown, the analysis then proceeds to step five where the burden shifts to the Commissioner to show Plaintiff's ability to perform other work which exists in significant numbers in the national economy, Bowen v. Yuckert, 482 U.S. 137, 146, n.5, 107 S. Ct. 2287, 2294, n.5 (1987); Plummer v. Apfel, 186 F.3d 422, 429 (3d Cir. 1999); Allen v. Bowen, 881 F.2d 37, 40 (3d Cir. 1989); Santise v. Schweiker, 676 F.2d 925, 938 (3d Cir. 1982); Dobrowolsky v. Califano, 606 F. 2d 403, 406 (3d Cir. 1979); Rossi v. Califano, 602 F.2d 55, 57-58 (3d Cir. 1979).

Plaintiff challenged that the Commissioner improperly evaluated the medical evidence. The ALJ considered the medical evidence of record, and found that Plaintiff cannot perform his past relevant work, but could perform a full range of light, low stress work (lifting no more than

NOT FOR PUBLICATION
CLOSED

20 pounds occasionally and 10 pounds frequently; walking and/or standing no more than 6 hours in an 8-hour workday) which provides the opportunity to alternate between positions every hour and which does not involve more than three to four step instructions. (Tr. 21.) Plaintiff also has transferable skills from semi-skilled work previously performed. (Tr. 25.) If a person can do light work, it is determined that he can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods. (Tr. 23.)

The ALJ evaluated objective medical facts and diagnoses and expert opinions of examining physicians. After Plaintiff's surgery, Dr. Seth Fisher, his cardiologist, described the EKG and Thallium exam to have been normal. (*See* Tr. 140.) Dr. Fisher's impression was that there was no evidence of large vessel ischemia, and that it was possible that Plaintiff's discomfort was non-cardiac in origin. (Tr. 137.) Upon follow-up on September 18, 1996, Dr. Fisher's impression was that Plaintiff was clinically stable with functional class I angina, which is consistent with having no resulting limitation of physical activity. (Tr. 140.) Dr. Miller, Plaintiff's treating physician, opined that Plaintiff had had a successful coronary artery bypass graft, that Plaintiff has rare episodes of chest discomfort for which he does not even take a nitroglycerin tablet, and that Plaintiff is a functional class I. (Tr. 22.) Dr. Stanley Knep's motor and neurological examination of the Plaintiff was normal, found that there was no abnormality of gait, station, or balance, and that Plaintiff was able to perform fine and gross hand movements.

If the Plaintiff's symptoms suggest a greater restriction of function than can be demonstrated by objective evidence alone, consideration will also be given to other factors. 20 C.F.R. § 404.1529(c)(3); SSR 96-7p. The ALJ also considered Plaintiff's activities and

**NOT FOR PUBLICATION**
**CLOSED**

household chores as a factor in determining Plaintiff's residual functional capacity. 20 C.F.R. § 404.1545. Based on the record and Plaintiff's testimony, he cooks, does household chores, drives short distances daily, does grocery shopping with his wife, watches television, walks 20 minutes a day, and takes care of his own personal hygiene. (Tr. 22.)

The Plaintiff also claimed that the Commissioner erred in not fully considering his non-exertional impairments when making his decision. The ALJ determined that Plaintiff retained the residual functional capacity for the full range of light work, with no non-exertional limitations. (Tr. 18-19, 23.) A non-exertional impairment affects an individual's ability to meet the demands of jobs other than strength demands. 20 C.F.R. § 404.1569a. With respect to treatment for anxiety and depression by Dr. Flood, the treatment not only occurred after Plaintiff was last insured, but also postdated the ALJ's decision. (Tr. 282-333.) (Df.'s Br. at 18.) Plaintiff submitted to the Appeals Council progress notes from Dr. Flood, dated March 26, 2001 to July 17, 2001. (Tr. 7.) The Social Security regulations provide that the Appeals Council will consider additional evidence, but only when it is new and material and relates to the period on or before the date of the ALJ hearing decision. 20 C.F.R. §§ 404.970 and 404.976(b). (Df.'s Br. at 18.) Plaintiff requested review of the ALJ's decision. (Tr. 5.) On September 20, 2002, the Appeals Council denied the request, concluding that the additional evidence does not provide a basis for changing the ALJ's decision. Id.

Aside from the lack of such treatment during the relevant period, Dr. Knep's October 27, 1998 report specifically found that no cognitive behavior or psychological manifestations were detected. (Tr. 258.) (Df.'s Br. at 18). There is no indication in the record that during the

**NOT FOR PUBLICATION**
**CLOSED**

relevant period, Plaintiff's cardiac or musculoskeletal symptoms, caused limitations with respect to, as example, concentrating, understanding, or remembering instructions; seeing or hearing; or postural functions. 20 C.F.R. § 404.1569a. (Df.'s Br. at 17.)

As Plaintiff's complaints regarding his functional limitations are subjective, the ALJ has assessed Plaintiff's credibility within the provisions of 20 C.F.R. 404.1529 and Social Security Ruling 96-7p. (Tr. 21.) Even though Dr. Pumill opined that Plaintiff is permanently disabled and his overall prognosis is quite guarded (Tr. 277.), Dr. Pumill has submitted no reports of treatment or clinical findings to support his conclusion. (Tr. 22.) Plaintiff's allegation of disability on the basis of having arthritis cannot be found to be wholly credible, due to the lack of objective medical evidence restricting Plaintiff, or of any pathology which would prevent Plaintiff from basic work activities. (Tr. 21.) "The ALJ's credibility determinations should not be reversed unless inherently incredible or patently unreasonable." Atlantic Limousine, Inc. v. NLRB, 243 F.3d 711, 718-19 (3d Cir. 2001) (quoting NLRB v. Lee Hotel Corp., 13 F.3d 1347, 1351 (9th Cir. 1994)). There is no evidence that the ALJ's credibility analysis was inherently "incredible" or "unreasonable."

The ALJ found that Plaintiff's subjective complaints were not credible to the extent alleged and that Plaintiff retained the residual functional capacity to perform the exertional demands of light work. (Tr. 22, 24.) The ALJ determined that there is no substantial evidence that Plaintiff's impairment together with his age, education and past work experience preclude him from doing all work. (Tr. 22, 23.) Based on an exertional capacity for light work,

13

**NOT FOR PUBLICATION**
**CLOSED**

Plaintiff's age, education, and work experience, Medical-Vocational Rule 202.21, Appendix 2, Subpart P, Regulations No. 4 would direct a conclusion of "not disabled." (Tr. 25.)

The ALJ found that there were a significant number of jobs in the national and regional economy that Plaintiff could perform consistent with his residual functional capacity, age, education, and work experience. (Tr. 23-25.) Accordingly, the ALJ found that Plaintiff was not disabled. (Tr. 24, 25.)

## CONCLUSION

No medical evidence exists contradicting the ALJ's finding that Plaintiff has the residual functional capacity to perform substantially all of the full range of light work. (Tr. 25.) The only evidence that might support a finding of disability insurance benefits eligibility is Plaintiff's direct testimony. (Tr. 346.) This was addressed by the ALJ. Plaintiff was reasonably found to lack credibility. (Tr. 22.) Substantial evidence supports the determination of the Social Security Administration, minimal evidence opposes the position of the Administration.

For preceding reasons, the ALJ's decision is AFFIRMED.

<u>s/William H. Walls</u>
United States District Judge